UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHAN REPKE,

       Plaintiff,                 Case No.

v.

                                    Hon.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

       Defendant.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out of this transaction or occurrence alleged in the Complaint.

### ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Nathan Repke ("Plaintiff"), by and through his attorneys, HURWITZ LAW PLLC, states the following for his Complaint against Defendant Blue Cross Blue Shield of Michigan ("Defendant"):

### INTRODUCTION

1.    Plaintiff Nathan Repke submitted a religious accommodation request for exemption from Defendant's COVID-19 vaccine mandate and was terminated

1

for not having "sincerely held religious beliefs" on January 5, 2022. Despite the Equal Employment Opportunity Commission ("EEOC") telling employers to "ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance," Defendant did the opposite. Instead of respecting Plaintiff's religious beliefs, Defendant swiftly denied his religious accommodation request without engaging in an interactive process. Defendant ignored the EEOC's warning that employers "should not assume that an employee is insincere simply because some of the employee's practices deviate from the commonly followed tenets of the employee's religion, or because the employee adheres to some common practices but not others" and terminated Plaintiff based on Defendant's subjective standard of religiosity. All the while, Defendant did not require the customers, vendors, or independent contractors on its premises to be vaccinated.

## PARTIES AND JURISDICTION

2. Plaintiff is an individual residing in Grand Blanc, Michigan.

3. Defendant is a domestic organization with a principal place of business located at 600 E. Lafayette Blvd., Detroit, Michigan.

4. Plaintiff's claims arise out of Defendant's violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Elliott-Larsen Civil Rights Act ("ELCRA") 28 U.S.C. § 1367.

5. This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim.

6. This matter is not subject to arbitration.

7. Venue is proper under 28 U.S.C. § 1391 because this is the judicial district where a substantial part of the events giving rise to the claims occurred.

8. Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination alleging religious discrimination and retaliation on February 25, 2022.

## FACTUAL ALLEGATIONS

9. Plaintiff was employed by Defendant as an Information Security Analyst I from November 2020, until his termination effective January 5, 2022.

10. Plaintiff was also employed by Defendant as a contractor from October 2019 until he was hired full-time.

### Defendant's Mandatory Vaccine Policy

11. Defendant announced a mandatory COVID-19 vaccine policy for "all employees and contractors, including those working remotely" on or about November 1, 2021.

12. Defendant required employees and contractors to be vaccinated by December 8, 2021.

13. Defendant never required visitors or vendors to be vaccinated.

3

14. The last day for employees to request accommodations to the vaccine mandate was November 11, 2021.

15. The decision whether to grant or deny religious and medical vaccine accommodations to applicants was made less than two (2) weeks later, on November 24, 2021.

16. Employees denied accommodation were automatically placed on unpaid leave of absence from December 9, 2021, until January 5, 2022.

17. Defendant's accommodation process was arbitrary and woefully inconsistent.

18. Defendant conducted a series of ambush-style interrogations with employees who submitted religious and medical accommodation requests.

19. Defendant's employees were not informed of questions ahead of time.

20. Attorneys for Defendant questioned employees, but employees were not allowed to be represented by legal counsel during questioning.

21. The interviewees were told that the interviews had a maximum time of fifteen (15) minutes in duration.

22. When employees asked questions, they were warned to just "answer the questions" or else they would be denied accommodation.

23. The interviewees were threatened to keep their answers short and to the point because time was "running out" and time was "limited."

24. Defendant told interviewees that it had not reviewed their written accommodation requests or supplemental information they've provided, such as letters from their pastors.

25. Defendant denied accommodation to interviewees with language barriers and/or difficulty answering questions due to medical conditions.

26. Defendant asked employees the following questions:

   a. Do you feel like the COVID-19 vaccines were rushed?
   b. What do you do when you are in physical pain?
   c. Do you take Aspirin, Sudafed, Tums, or Tylenol?
   d. Do your beliefs prevent you from receiving medical treatments?
   e. Do you have a primary care physician?
   f. Has your doctor ever prescribed medication?
   g. What would you do if your doctor prescribed medication?
   h. What medication have you taken?
   i. Have you always followed this religious belief?
   j. When was the last time you received a vaccination?
   k. Have you ever spent the night in a hospital?

27. Employees were told that over-the-counter medications like Tylenol and Tums were developed and manufactured using stem cells.

28. However, the over-the-counter medications referenced by Defendant were developed decades before stem cell research was conducted.

29. Moreover, many of Defendant's employees were objecting to the COVID-19 for religious reasons that had nothing to do with stem cell research.

30. Defendant terminated approximately 250 employees who requested a religious accommodation to the COVID-19 vaccine on January 5, 2022.

31. Defendant incentivized employees to retire early in 2020 in order to reduce staffing costs, but Defendant did not have to eliminate jobs in 2021 because it terminated unvaccinated employees.

32. Defendant touts on job recruiting websites that it requires COVID-19 vaccination with "no exemptions."

33. Employees denied accommodation to the vaccine mandate were forced into the horrible position of choosing between vaccination or termination:

> Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith. It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children. To many, this is the most horrifying of Hobson's choices.

*Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

34. Defendant terminated remote employees who remained unvaccinated despite those employees posing no discernible risk to their coworkers.

### Plaintiff's Religious Accommodation Request

35. Plaintiff seeks to make all decisions, especially those regarding vaccination and other medical decisions, through prayer.

36. Plaintiff submitted a religious exemption request for the COVID-19 vaccine.

37. Defendant interviewed Plaintiff regarding his beliefs before ultimately

6

denying his request for accommodation.

38. Plaintiff, maintaining his sincerely held religious beliefs, did not receive the vaccine, and was subsequently placed on unpaid leave.

39. Plaintiff was terminated effective January 5, 2022.

40. The religious accommodation process mandates "bilateral cooperation" between employer and employee. *Ansonia Bd. of Educ. v. Philabrook*, 479 U.S. 60, 69 (1986).

41. No such "bilateral cooperation" occurred during Defendant's interrogation of its employees or otherwise during the process.

42. The United States Equal Employment Opportunity Commission tells employers that a prototypical example of reasonable accommodation to the vaccine is being "given the opportunity to telework." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021). "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*. (Mar. 1, 2022).

43. Plaintiff was an excellent performer of his job duties.

44. Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

45. The U.S. Equal Employment Opportunity Commission ("EEOC")

7

advises employers to "ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

46. An individual's testimony about his or her belief "must be given great weight" and is enough to demonstrate a sincerity. *Seeger*, 380 U.S. at 184 (1965).

47. Plaintiff's religious conviction is highlighted by the fact he remained unvaccinated in the face of termination, losing his livelihood in the process.

## Defendant Did Not Base Its Decision on Undue Hardship, Nor Could It Establish Undue Hardship

48. The prohibition against religious discrimination imposes a "duty" on employers to accommodate the sincere religious observances of employees, absent a showing of "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

49. An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975).

50. Defendant is not claiming undue hardship.

51. Defendant cannot allege undue hardship when other employees performing similar job duties were granted religious and medical accommodations to the vaccine.

## COUNT I
## VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.
## RELIGIOUS DISCRIMINATION – FAILURE TO ACCOMMODATE

52. Plaintiff restates the foregoing paragraphs as set forth fully herein.

53. At all times relevant hereto, Plaintiff was an employee and Defendant was his employer for the purposes of 42 U.S.C. § 2000e, *et seq*.

54. Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e *et seq*., makes it unlawful for an employer to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

55. Title VII prohibits an employer from discriminating against an employee "because of such individual's... religion." 42 U.S.C. § 2000e-2(a)(1).

56. This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's... religious observance or practice without undue hardship on the conduct of the employer's business." *Id*. § 2000e(j).

57. After receiving an accommodation request, "the employer is obligated by law to engage in interactive process – a meaningful dialogue with the employee[.]" *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

58. The employer must act in "good faith," *Id*., and the employee must "make a good faith attempt to satisfy his needs through means offered by the employer," *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982).

9

59. Title VII makes it unlawful for an employer to retaliate against an employee who engaged in protected activity.

60. Plaintiff holds sincere *bona fide* religious beliefs that preclude him from receiving a COVID-19 vaccine.

61. Plaintiff informed Defendant of those beliefs and requested religious accommodation from the vaccine mandate.

62. Defendant refused to engage in the interactive process with Plaintiff regarding his religious accommodation requests.

63. Under Title VII, Plaintiff can establish a *prima facie* case of religious discrimination based on a failure to accommodate by showing: (1) he has a *bona fide* religious belief that conflicts with an employment requirement; (2) about which he informed the [Defendant]; and (3) he suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

64. Multiple accommodations could have been offered to Plaintiff. They include mask wearing and periodic testing for COVID-19—the very same accommodations being offered to virtually every public and private employee in the State of Michigan. Defendant initially stated these accommodations were acceptable, then changed its expectation a week later.

65. A "[r]easonable accommodation is by its terms most logically

10

construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).

66. Defendant would not suffer undue hardship by granting Plaintiff an accommodation. 42 U.S.C. § 2000e(j).

67. The issue became moot when Defendant failed to engage each employee in "a meaningful dialogue" about the accommodation request and learn whether an acceptable accommodation would impose undue hardship. *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

68. Instead, Defendant announced a one-size-fits all approach to accommodation that deprived Plaintiff of the conversation necessary to discover what accommodations were possible. *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) ("courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary" and "[a] party that fails to communicate... may also be acting in bad faith").

69. Irrespective of the interactive process, Defendant failed to provide Plaintiff with reasonable accommodations for his religious beliefs.

70. Defendant thereby discriminated against Plaintiff because of his religious beliefs.

11

71.     Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiff.

72.     As a direct and proximate result of Defendant's violation of Title VII Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

73.     As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been denied employment and placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

74.     By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

**COUNT II**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.**
**<u>DISPARATE TREATMENT DISCRIMINATION</u>**

75.     Plaintiff restates the foregoing paragraphs as set forth fully herein.

76.     "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct

evidence, present a prima facie case of indirect discrimination by showing (1) they were a member of a protected class, (2) they experienced an adverse employment action (3) they were qualified for the position, and (4) they were replaced by a person outside of the protected class or were treated differently than similarly situated employees." Tepper v. Potter, 505 F.3d 508, 515 (6th Cir. 2007).

77.     Plaintiff espoused religious beliefs and is therefore a member of a protected class.

78.     Defendant directly discriminated against Plaintiff by terminating them after they stated their sincerely held religious beliefs that conflicted with Defendant's subjected standard of religiosity.

79.     Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

80.     Defendant placed Plaintiff on unpaid suspension before ultimately terminating employment.

81.     It is undisputed that Plaintiff was qualified for the position.

82.     Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being vaccinated.

83.     Plaintiff was terminated and replaced with a person of different religious beliefs.

84. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, the loss of insurance for his family, and the physical effects associated therewith because of the denial of his requests, and will so suffer in the future.

COUNT III
VIOLATION OF ELCRA, MCL 37.2101, *et seq.*
<u>**DISPARATE TREATMENT AND INTENTIONAL DISCRIMINATION**</u>

85. Plaintiff restates the foregoing paragraphs as set forth fully herein.

86. Plaintiff holds sincere religious beliefs that conflict with Defendant's COVID-19 vaccine mandate.

87. Plaintiff informed Defendant how these sincerely held religious beliefs conflicted with Defendant's COVID-19 vaccine mandate.

88. "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a *prima facie* case of indirect discrimination by showing that the employee (1) was a member of a protected class; (2) experienced an adverse employment action; (3) was qualified for the position; and (4) was replaced by a person outside of the protected class or that the employee was treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

89. Defendant directly discriminated against Plaintiff based on termination

14

after the employee espoused sincerely held religious beliefs that conflicted with Defendant's policy.

90. Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

91. Plaintiff's sincerely held religious beliefs qualify the employee as a member of a protected class.

92. Defendant placed Plaintiff on unpaid suspension before ultimately terminating Plaintiff.

93. Plaintiff was qualified for the position.

94. Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite being unvaccinated.

95. Plaintiff was terminated and replaced with a person of different religious beliefs.

96. Defendant also terminated Plaintiff based on Defendant's own subjective standard of religiosity, thus directly discriminating against Plaintiff's unique sincerely held spiritual beliefs.

97. EEOC Guidance states that ("[t]he definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs . . . including those that may be unfamiliar to employers.")

98. The law on religious discrimination states that religious beliefs need not be "acceptable, logical, consistent or comprehensible to others" and the law "leaves little room for a party to challenge the religious nature of an employee's professed beliefs."). *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002).

99. Defendant defied the law when it determined that some religious beliefs of its employees were valid and while others were bogus.

100. In discovery, Plaintiff will be able to investigate which types of religious beliefs Defendant found were acceptable and which types of religious beliefs Defendant discriminated against, thereby establishing evidence probative of discriminatory intent.

101. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, the loss of insurance for his family, and the physical effects associated therewith because of the termination and will so suffer in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a. Compensatory damages for monetary and non-monetary loss;

b. Exemplary and punitive damages;

c. Prejudgment interest;

d.      Attorneys' fees and costs; and

e.      Such other relief as in law or equity may pertain.

Respectfully Submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorneys for Plaintiff
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
*noah@hurwitzlaw.com*

Dated: August 11, 2023

17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHAN REPKE,

        Plaintiff,

v.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

        Defendant.

Case No.

Hon.

Noah S. Hurwitz
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

## DEMAND FOR TRIAL BY JURY

Plaintiff, Nathan Repke, by and through his attorneys, Hurwitz Law PLLC, hereby demands a trial by jury in the above-captioned matter for all issues triable.

    Respectfully Submitted,
    HURWITZ LAW PLLC

    */s/ Noah S. Hurwitz*
    Noah S. Hurwitz (P74063)
    *Attorney for Plaintiff*

Dated: August 11, 2023